s        **IN THE UNITED STATES DISTRICT COURT**
        **FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **(1)  SUZETTE GRILLOT,** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | **Case No:** CIV-19-241-F |
| ) | |
| **(1)  STATE OF OKLAHOMA, ex rel.,** ) | |
| **(UNIVERSITY OF OKLAHOMA** ) | |
| **BOARD OF REGENTS);** ) | |
| ) | |
| And ) | |
| ) | |
| **(2)  JAMES L. GALLOGLY, (in his** ) | |
| **individual and official capacities)** ) | |
| **PRESIDENT, UNIVERSITY OF** ) | |
| **OKLAHOMA;** ) | |
| ) | |
| And ) | **JURY TRIAL DEMANDED** |
| ) | **ATTORNEY LIEN** |
| **(3)  JON KYLE HARPER, (in his** ) | |
| **individual and official capacities)** ) | |
| **SENIOR VICE PRESIDENT AND** ) | |
| **PROVOST, UNIVERSITY OF** ) | |
| **OKLAHOMA.** ) | |
| ) | |
| *Defendants.* ) | |

## **COMPLAINT**

COMES NOW the Plaintiff, Suzette Grillot, "Plaintiff" and for her causes of action hereby alleges and states as follows: During and throughout the period between December of 2017 and March of 2019, continuing to the present, Plaintiff publicly commented on matters of public concern regarding actions of the Defendants: University

1

of Oklahoma Board of Regents, President James L. Gallogly, and Senior Vice President and Provost Jon Kyle Harper. As a result, Plaintiff has suffered and continues to suffer unlawful adverse employment actions in the form of loss of roles, responsibilities, and wages, including but not limited to the positions of Dean of the College of International Studies, Vice Provost of International Programs, and Title of the William J. Crowe Chair in Geopolitics. Furthermore, during and prior to this period, Defendants unlawfully subjected Plaintiff to wage discrimination on the basis of her gender.

## JURISDICTION AND VENUE

1. Plaintiff Suzette Grillot is a female who is a citizen of Oklahoma City, Oklahoma, located in Oklahoma County, within the boundaries of the United States Western Federal District of the State of Oklahoma.

2. Defendant University of Oklahoma ("OU") is a government entity, governed by the University of Oklahoma Board of Regents ("BOR OU"). At all times relevant, Defendant was operating within the State of Oklahoma and within the Western Federal District of the State of Oklahoma.

3. The acts of Defendant(s) alleged herein and giving rise to this action all occurred in Cleveland County, State of Oklahoma and Oklahoma County, State of Oklahoma.

4. Jurisdiction in this court is appropriate pursuant to 28 U.S.C. §1331, as Plaintiff's claims involve matters or issues under federal law.

5. This Court has Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367

6.Venue is appropriate in this court pursuant to 28 U.S.C. § 1391, as the Defendant OU conducts business and operations, and may be located and served within the boundaries of the Western District Federal Court of Oklahoma, and the substantial part of the events and/or emissions giving rise to this action occurred in the Western District of Oklahoma.

## PARTIES

7.Plaintiff is Suzette Grillot, Ph.D., a tenured-faculty member in Department of International and Area Studies, within the College of International Studies, at the University of Oklahoma. Until recently, she also held the titles and positions of Dean of the College of International Studies, Vice Provost for International Programs, William J. Crowe Jr. Chair in Geopolitics.

8.Defendant OU is a subdivision of the Oklahoma State Government, organized under the Constitution of the State of Oklahoma, organized and controlled pursuant to the Statutes of the State of Oklahoma.

9.The University of Oklahoma Board of Regents is the governing body responsible for the University of Oklahoma.

10.Defendant Gallogly is President of the University of Oklahoma, reports to the Board of Regents, is chief executive official of the University, responsible for all administrative actions.

11. Defendant Jon Kyle Harper is Senior Vice President and Provost, who reports directly to Defendant Gallogly and who was the direct supervisor of Plaintiff Grillot during the time of relevant events.

## ALLEGATIONS OF FACT

12. Plaintiff Grillot has been employed by the Defendant OU since January 1999, serving, progressively, in the capacities of Visiting Assistant Professor, Assistant Professor, Associate Professor, Associate Director, Associate Dean, Full Professor, Interim Dean, Dean, Vice Provost, and William J. Crowe, Jr. Chair in Geopolitics.

13. Plaintiff Grillot was employed as Dean of the David L. Boren College of International Studies and Vice Provost of International Programs at the University of Oklahoma (OU) for Defendant OU from on or about December of 2012 until January 18, 2019 and January 21, 2019, respectively.

14. As Dean of the David L. Boren College of International Studies (CIS), Plaintiff served the University in the official capacity of CIS Chief Academic Officer, with the primary charge of fulfilling the mission, vision, and core values of CIS with respect to CIS students, prospective students, faculty, staff, donors, key stakeholders, and alumni. The Dean of CIS has dual reporting responsibilities to the OU President and Provost. The College of International Studies distinguishes itself from other colleges at OU insomuch as a central element of its purpose is to further the interests of those of foreign national origins, minority races and ethnicities, and to further their cultures though advocacy, dialogue, academic engagement, and the provision of comprehensive

support of beneficiary stakeholders. CIS is also substantially and significantly comprised of faculty, staff, and students of a minority race, ethnicity, and foreign national origin.

15. As Vice Provost for International Programs, Plaintiff served in the official capacity of Senior International Officer with the primary charge of oversight and responsibility for OU's campus-wide international engagement, including that of OU-Norman, OU-Health Sciences Center, OU-Tulsa, OU-Italy, OU-Mexico, and OU-Brazil. As Vice Provost, Dr. Grillot was the ultimate authority at OU specifically responsible for the success of OU's international students on all OU campuses.

16. As Dean of CIS and Vice Provost for International Programs, Dr. Grillot served as the most prominent leader, champion, and voice for causes related to these protected groups at OU.

17. During the course of her employment, Defendant OU subjected Plaintiff to wage discrimination on the basis of gender.

18. During the course of her employment, Defendant OU subjected Plaintiff to a hostile work environment and disparate treatment in the form of gender discrimination.

19. Specifically, Plaintiff was compensated disproportionately less than male employees performing substantially equal work for the last three (3) years.

20. Over the course of the last three (3) years leading up to January 2019, peer, male Deans at OU were paid more than Plaintiff for performing equal work, work of substantially equal skill, effort, and responsibility under similar working conditions.

21. Plaintiff had additional roles and responsibilities as Vice Provost for International Programs that were above and beyond that of Dean of CIS and her peer, male Deans.

22. Plaintiff reported and complained of the pay inequity between herself and male colleagues to her immediate supervisor, Defendant Kyle Harper.

23. Defendant Harper tacitly acknowledged gender-based pay inequity regarding Plaintiff Grillot's pay by and through his action in June of 2015 to increase Plaintiff's salary. Yet, Defendant Harper failed to adequately correct the illegal condition of inequity by administering an increase in pay that did not adequately resolve the inequities.

24. In a meeting on November 26, 2019, multiple OU employees, including Plaintiff, made Defendant Harper, Defendant Gallogly, and OU Human Resources Executive Staff aware of clear, long-existent, ongoing and unresolved gender-based pay inequities among OU employees at OU. Defendant Gallogly acknowledged areas of concern, and Defendant Harper dismissed such as frivolous publications by the student newspaper, the OU Daily.

25. During the course of her employment, Defendants wrongfully demoted Plaintiff in retaliation for her engagement in protected speech on matters of public concern.

26. During the course of her employment and after being removed from the positions of Dean and Vice Provost, Defendants unlawfully removed numerous roles and

responsibilities of the Plaintiff's that are not clear or direct elements of the responsibilities of the position of Dean of CIS, officially or unofficially. They include but are not limited to:

    a.    Removal of role, responsibility, and compensation as leader of the President's Community Scholars (PCS) study-abroad programs on February 5, 2019

    b.    Removal of title, role, responsibility, and resources associated with the William J. Crowe, Jr. Chair in Geopolitics in the Department of International and Area Studies on March 1, 2019.

    c.    Retroactive change in compensation after firing to move overload teaching assignments to in-load requirements, resulting in a further loss of just compensation.

27. Plaintiff made numerous public statements, critical of OU administration and administrative actions, in the period of December 2017 until, throughout and after January 18, 2019, the date Defendant Harper executed her dismissal from the position of Dean.

28. In December of 2017, Plaintiff publicly criticized University of Oklahoma Regent, Kirk Humphreys for making derogatory comments on the basis of sexuality on television.

29. At numerous instances in January and February of 2018, Plaintiff publicly commented about the University of Oklahoma Board of Regents' (BOR OU) secretive manner in which the search for a new OU President was being conducted at the time.

30. In February of 2018, an OU Regent directly criticized Plaintiff for her public comments given in February of 2018.

31. On March 26, 2018, Plaintiff delivered a public letter, signed by more than 500 members of the public, in addition to Plaintiff, that commented further on the selection process, selection itself, and solicited questions of OU President-Designate, Defendant James L. Gallogly, who had just been selected by the OU BOR as the new president in a non-transparent search.

32. On April 18th of 2018, Defendant Harper held a meeting with Plaintiff in which he criticized her for her recent public remarks.

33. Sometime after Defendant Gallogly's selection, but prior to his assumption of the Office of the President of OU, Defendant Gallogly made public comments that indicated staff layoffs at OU were under consideration. In response, Plaintiff made a public statement on June 24, 2018, in which she raised concern for the potential disparate impact on women such layoffs could have at OU.

34. On July 12, 2018, Defendant Harper held a meeting with Plaintiff in which he requested two (2) memos from Plaintiff: (1) justification for the continued existence of the College of International Studies; (2) justification for short-term study abroad programs. The following day Defendant Harper requested, by email, information

regarding the existence of and potential closing of international study centers in Mexico and Brazil.

35.     In the afternoon of July 19th, 2018, Defendants Gallogly and Harper held a meeting with Plaintiff – a meeting that had been previously scheduled to discuss the requests for information regarding the study centers, study abroad programming, and other requests.

36.     During the meeting Defendant Gallogly used a raised voice to verbally reprimand her for making information public that ought not be public. Defendants' articulated justification for this was Plaintiff's inability to understand the fiscal context of that which she made public. Defendant Gallogly made such statements as: "You wouldn't understand the budget even if I showed it to you. You are just an academic. You just study the world. I have worked around the world. My passport is twice as thick as yours."

37.     In months following, Plaintiff was informed by colleagues, members of the public, and others that Defendant Gallogly was indirectly and directly referring to her as emotional, unprofessional, over-reactive and not to be trusted.

38.     On August 8, 2018, Defendant Harper criticized Plaintiff's use of social media to voice her opinions. Defendant Harper stated that she was "unprofessional and untrustworthy." Later, in the same conversation, Plaintiff specifically asked Defendant Harper if there was an issue with the performance of her duties, to which he responded that "[her] performance was appropriate for the past administration, but that they would see how [she] adapt[s] to the new regime and new priorities."

39. On August 14, 2018 Plaintiff Grillot met with Defendant Harper and Associate Provost Stewart Berkinshaw to discuss budget reductions for CIS. Throughout the conversation Defendant Harper consistently referred to CIS in a negative way and referred to Plaintiff Grillot as "juvenile" when she questioned whether the new administration considered international education a priority.

40. On October 16, 2018 Plaintiff Grillot met with Defendant Gallogly, Defendant Harper, Associate Provost Berkinshaw and then-acting Chief Financial Officer Ken Rowe to discuss the CIS budget. Defendant Gallogly denied during the conversation that CIS was relevant to the University's diversity efforts.

41. On November 6, 2018, Defendant Harper informed Grillot that the submission of her annual "self-evaluation" was six days past due and requested the evaluation. Plaintiff informed Defendant Harper that she had concerns about having never been formally evaluated in her entire time as Dean of CIS and OU Vice Provost for International Programs. Upon information and belief, Plaintiff was singled out for such treatment in retaliation for her protected speech.

42. On January 12, 2019, Defendant Harper informed Plaintiff, via phone, that the College of International Studies would receive numerous, targeted cuts in funding from the central administration, amounting to an approximate 47% reduction in funding in contrast to the previous fiscal year. During the conversation, Plaintiff questioned the reasoning for the cuts to the targeted areas that included OU in RIO. OU in Rio is the brand name of a program that facilitates and provides for the exchange of students from

both Brazil to attend OU and OU students to study in Brazil, increases opportunities for scholarly activity by OU faculty whose discipline encompasses Brazil or are themselves Brazilian nationals, of a minority race, ethnicity, and foreign national origin; and serves to recruit prospective students, faculty, and staff from Brazil into the enrollment at or employ of OU. Plaintiff stated that the program could, despite the cuts, continue to run at reduced-cost with CIS's remaining funds and resources.

43.  This action was executed because Defendant Harper and Defendant Gallogly disapprove of the practice of University moneys benefiting foreign nationals who are also members of a minority race and ethnicity. The closure of the OU in Rio program would have narrow, yet severe, disparate negative impact on students, faculty and staff of a minority race, ethnicity and foreign national origin. Acting and speaking upon the conviction that such cuts and prescribed actions were, on their face, discriminatory against students, faculty and staff upon the conditions of their protected classes of race and national origin, Plaintiff advised Defendant Harper that this was a bad decision and would not be well-received by members of the public. Defendant Harper advised Plaintiff that any communications regarding the cuts would need to be done in coordination with him. Defendant Harper stated that he was Plaintiff's superior and she his subordinate, and that she was obligated to comply. Plaintiff acknowledged the professional relationship but stated that she did not do things that she thought were wrong. Plaintiff offered no assurances that she would not publicize the contents of this

conversation, given that the information was and is a matter of public concern and protected by the First Amendment.

44. On January 17, 2019, Defendant Harper delivered a negative performance memo to Plaintiff based on her advocacy and protected speech.

45. Defendant Harper held a meeting the following day, January 18, 2019, in which he and a Human Resources Executive staff-member informed Plaintiff she could no longer continue in the role as Dean, the dismissal effective that day, 5:00 p.m. January 18, 2019. Defendants presented Plaintiff with three (3) options:

1. Resign from the university, from her faculty and Dean positions; receive one (1) year of current pay and enter into a mutual non-disclosure contract.

2. Be removed as Dean and retain faculty title; receive 1-year of dean stipend and enter into non-disparagement contract.

3. Be removed as Dean, retain faculty position at faculty pay.

46. Plaintiff was dismissed for reasons including, but not limited to repeated exercise of First Amendment protected speech.

47. Until January 17, 2019, Plaintiff had never received a negative employment performance review or been subjected to performance-related adverse action.

48. Until January 17, 2019, Plaintiff had a demonstrated record of successful performance in the fulfillment of her responsible duties at OU.

49. On January 21, 2019, Plaintiff, by and through counsel, elected "Option 3".

50. Later, on January 21, Plaintiff released a public statement regarding her dismissal as "Dean."

51. Later, on January 21, 2019, Defendant Harper, dismissed Plaintiff, via email, from the positions of Dean and Vice Provost of International Programs, this communication being the first mention of her discharge from the position of Vice Provost.

52. The termination of her position as Vice Provost is reflective of the animus Defendant Harper possesses for Plaintiff's protected activity and is, on its face, retaliation.

53. Plaintiff retained her employment as a tenured faculty member at OU and title of the William J. Crowe, Jr. Chair in Geopolitics.

54. On January 22, 2019, Plaintiff spoke critically of Defendant Gallogly, OU administration, and the OU BOR in a public forum in a building on the OU-Norman, Oklahoma campus.

55. On January 29, 2019, Plaintiff's office computer was confiscated without notice or cause; and done with the purpose of further intimidating, harassing and retaliating against her. Plaintiff filed a police report. As a result, Plaintiff was unable to perform duties and functions relating to her position of faculty during this time.

56. On January 31, 2019, Plaintiff's immediate supervisor, Associate Dean of CIS, Dr. Mitchell Smith, informed Plaintiff that she would retain the title of the endowed William J. Crowe, Jr. Chair in Geopolitics.

57. On February 5, 2019, Plaintiff was informed, via phone, by acting-Vice President for Student Affairs, Kristen Partridge, that because of her public comments on January 22, 2019, her services involving the President's Community Scholars study abroad programs were no longer appropriate.

58. On March 1, 2019, via email letter, Defendant Harper advised Plaintiff that she would no longer be in possession of the title of the Crowe Chair and altered the Plaintiff's compensation for the current (Spring 2019) semester.

59. Plaintiff has filed an employment charge with the U.S. Equal Employment Opportunity Commission against the Defendant University of Oklahoma, Defendant James Gallogly, and Defendant Kyle Harper under Title VII of the U.S. Civil Rights Act of 1964 for gender discrimination and retaliation for protected activity. Plaintiff is currently awaiting her right to sue on the basis of Title VII. Leave to amend the Title VII claims will be sought at that time.

## I. THE EQUAL PAY ACT, 29 USC §206 (d)(1)

60. The Plaintiff adopts and incorporates paragraphs 1-59 above, as if fully set forth herein, and further states the following:

61. This cause of action is presented by Plaintiff against Defendant OU.

62. The acts of Defendant in failing to pay Plaintiff equally as men for comparable work violates The Equal Pay Act.

63. As a result, Plaintiff is entitled to recover lost wages, plus liquidated damages along with attorneys' fees, costs, and pre-judgment interest and any other relief the Court deems appropriate in excess of 75,000 dollars.

## II. THE FIRST AMENDMENT, 42 U.S.C. §1983

64. The Plaintiff adopts and incorporates paragraphs 1-59 above, as if fully set forth herein, and further states the following:

65. In their individual capacities, Defendant Harper and Defendant Gallogly's actions to terminate Plaintiff's employment position as Dean and Vice Provost, the roles, responsibilities, and wages therein lost, the expressed and unexpressed cause for the action being Plaintiff's protected speech, violates her First Amendment rights.

66. Defendants' actions to terminate Plaintiff's employment roles and responsibilities unassociated with the position of Dean or Vice Provost, and wages therein lost, the expressed and unexpressed cause for the action being Plaintiff's protected speech, violates her First Amendment rights.

67. As a result, Plaintiff is entitled to recover lost wages - back and future, damages for emotional pain and suffering, attorneys' fees and costs, and pre-judgment interest.

68. Because Defendants Gallogly and Harper's actions were willful and in bad faith, Plaintiff is entitled to punitive damages in excess of 75,000 dollars.

## III. TORTIOUS INTERFERENCE OF BUSINESS RELATIONS, PURSUAN TO THE COURT'S SUPPLEMENTAL JURISDICTION, 28 U.S.C. § 1367

69. The Plaintiff adopts and incorporates paragraphs 1-59 above, as if fully set forth herein, and further states the following:

70. This cause of action is presented by Plaintiff against Defendant Gallogly and Defendant Harper.

71. The acts of Defendants Gallogly and Harper against Plaintiff tortiously interfered with her business opportunities and contracts by retaliating against her and punishing her for her constitutionally protected conduct, as well as her gender.

72. As a result, Plaintiff is entitled to recover actual, compensatory and punitive damages from Defendants Gallogly and Harper in excess of 75,000 dollars.

**WHEREFORE**, premises considered and for the reasons set forth herein, Plaintiff respectfully prays the Court declare Defendants' actions to be in violation of the Law and award Plaintiff her actual damages, lost wages, back pay and front pay, compensatory damages, liquidated damages, damages for emotional pain and suffering, and punitive damages, each as described and demanded above, in excess of 75,000 dollars, together with any further legal and/or equitable relief the Court determines to be appropriate under the laws of the United States and the State of Oklahoma, in addition to pre-judgment and post-judgment interest, as well as Plaintiff's costs and reasonable attorneys' fees.

**RESPECTFULLY SUBMITTED THIS 28th DAY OF MARCH, 2019.**

Respectfully,


s/ Rand C. Eddy_____
Rand C. Eddy, OBA # 11822
Mulinix Goerke & Meyer, PLLC
210 Park Avenue, Ste. 3030
Oklahoma City, Oklahoma 73102
Telephone: (405) 232.3800
Facsimile: (405) 232.8999
rand@lawokc.com

***Attorney for Plaintiff***