**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

SUZETTE GRILLOT,

Plaintiff,

v.

(1) STATE OF OKLAHOMA *ex rel.* (UNIVERSITY OF OKLAHOMA BOARD OF REGENT);

(2) JAMES L. GALLOGLY, (in his individual and official capacities) PRESIDENT, UNIVERSITY OF OKLAHOMA;

and,

(3) JON KYLE HARPER, (in his individual and official capacities) SENIOR VICE PRESIDENT AND PROVOST, UNIVERSITY OF OKLAHOMA.

Defendants.

Case No. CIV-19-241-F

**MOTION TO DISMISS OF DEFENDANTS**
**JAMES L. GALLOGLY AND JON KYLE HARPER**

Defendants, Former President James L. Gallogly ("Former President Gallogly") and Senior Vice President and Provost Jon Kyle Harper ("Provost Harper"), respectfully request the Court dismiss Plaintiff's claim for tortious interference of business relations pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), on two grounds:

(i) Plaintiff's sole remedy for the tortious interference of business relations claim lies under the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151, *et*

*seq*. Under the act, state employees like Former President Gallogly and Provost Harper are immune from liability.

(ii) Plaintiff also fails to state a claim for tortious interference with business relations because an organization (or its officers who act on its own behalf) cannot interfere with its own business relationship and/or contract.

## INTRODUCTION

Plaintiff held the positions of Dean of the David L. Boren College of International Studies ("CIS") and Vice Provost of International Programs at the University of Oklahoma. The University removed Plaintiff from these positions due to her insubordination and consistent disagreement with Plaintiff's superiors as to the future of certain international programs. Specifically, Plaintiff failed to comply with a request to facilitate a management plan in relation to the closure of OU Rio and contravened explicit instructions regarding the dissemination of the management plan and other information regarding funding cuts to the CIS to the public. The University could not retain Plaintiff in a management position as dean and provost when she opposed the University's managerial decisions and policies.

In her Complaint, Plaintiff alleges "Defendant Gallogly is President of the University of Oklahoma, reports to the Board of Regents, is chief executive official of the University, responsible for ***all*** administrative actions." [Complaint, Doc. No. 1, ¶ 10 (emphasis added).] Plaintiff also alleges "Defendant Jon Kyle Harper is Senior Vice President and Provost, who reports directly to Defendant Gallogly and who was the direct supervisor of Plaintiff Grillot during the time of relevant events." [Complaint, Doc. No. 1,

¶ 11.] Plaintiff contends she had dual reporting responsibilities to Former President Gallogly and Provost Harper. [Complaint, Doc. No. 1, ¶ 14.]

Plaintiff contends Former President Gallogly and Provost Harper "tortiously interfered with her business opportunities and contracts by retaliating against her and punishing her for her constitutionally protected conduct, as well as her gender." [Complaint, Doc. No. 1, ¶ 71.] The "business opportunities and contracts" Plaintiff refers to are (1) dismissal from the position of Dean of the College of International Studies, (2) dismissal from the position of Vice Provost of International Programs, (3) removal from position associated with the President's Community Scholars program, and (4) removal from position of William J. Crowe, Jr. Chair in Geopolitics in the Department of International and Area Studies. [Complaint, Doc. No. 1, ¶ 26.] Plaintiff specifically alleges Provost Harper—Plaintiff's direct supervisor—dismissed her from these positions. [Complaint, Doc. No. 1, ¶ 51.]

Plaintiff's allegations that Former President Gallogly and Provost Harper interfered with her positions at the University fail to state a claim upon which relief can be granted. At all times relevant to the acts complained of in the Complaint, Former President Gallogly and Provost Harper were acting as Plaintiff's supervisors within the course and scope of their employment with the University. Accordingly, Former President Gallogly and Provost Harper are immune from tort liability pursuant to the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151, *et seq.* ("OGTCA"); they cannot be sued. Even aside from the OGTCA, Plaintiff's claim of interference is not viable under extant

Oklahoma law. This Court should dismiss Plaintiff's claim for tortious interference of business relations against Former President Gallogly and Provost Harper.

## ARGUMENTS AND AUTHORITIES

### I. FORMER PRESIDENT GALLOGLY AND PROVOST HARPER ARE IMMUNE FROM LIABILITY AND CANNOT BE SUED FOR THE TORTIOUS INTERFERENCE CLAIM.

It is well-established that the OGTCA is the exclusive remedy for an injured plaintiff to recover against a State governmental entity (or its employee) in tort. *See* Okla. Stat. tit. 51, § 153(B) ("[T]he liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise."); *see Tuffy's Inc. v. City of Okla. City*, 2009 OK 4, ¶ 7, 212 P.3d 1158, 1163; *Fuller v. Odom*, 1987 OK 64, ¶ 4, 741 P.2d 449, 452; *Curtis v. Bd. Of Educ.,* 1995 OK 119, ¶ 4, 914 P.2d 656, 658; *Duncan v. City of Nichols Hills*, 196 OK 16, ¶14, 13 P.2d 1303, 1307. Pursuant to § 152.1(A) of the OGTCA:

> The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, ***and all of their employees acting within the scope of their employment***, whether performing governmental or proprietary functions, shall be immune from liability for torts.

Okla. Stat. tit. 51, § 152.1(A) (emphasis added).

The immunity of state employees is absolute. *See State v. Burris*, 1995 OK 42, 894 P.2d 1122. The blackletter of § 152.1 sets up two requisites for absolute immunity: (1) an employee (2) acting within the scope of their employment. Because Former President Gallogly and Provost Harper meet both requirements, they are immune from Plaintiff's tort claim and cannot be sued.

"Scope of employment" is defined as performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority. *Tuffy's Inc.*, 2009 OK 4, ¶ 8, 212 P.3d at 1163 (citing Okla. Stat. tit. 51, § 152(12)). An employee of the state is relieved from private liability for tortious conduct committed *within the scope of employment*. *See id.* (citing *Pellegrino v. State*, 2003 OK 2, ¶ 4, 63 P.3d 535; *Martin v. Johnson*, 1998 OK 127, 975 P.2d 889). "If an employee acts in bad faith *and contrary to the interests of the employer* . . . the employee may be considered to be acting outside the scope of his employment." *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 17, 91 P.3d 673, 678-79 (emphasis in original) (quoting *Martin*, 1998 OK 127, ¶ 32, 975 P.2d at 896-97). The tort of tortious interference with a contract or business relationship ***requires*** a showing of bad faith. *Id.* at 1166. Therefore, Plaintiff must show that Former President Gallogly and Provost Harper were acting outside the scope of their employment with the University.

However, even acting in violation of the government agency's policies or contracts does not necessarily take an employee outside the scope of employment. *Id.* Like the present situation, *Martin v. Johnson* involved a claim of tortious interference against a school district and supervisor under the OGTCA. The *Martin* Court issued the following warning in regard to pleading a tortious interference claim against school officials:

> [C]haracterizing an employee's conduct as contrary to the interests of the employer cannot be based merely upon the employee's interference with the contract. Every breach of contract does not give rise to a claim of tortious interference with contract merely because an employee or agent of a party to the contract was involved in the breach. An allegation that a breach of contract occurred and was effectuated by an employee of the School District, does not, by itself, show a tortious breach of contract. . . . The interference

> with contract tort is not designed to protect against an employee acting in good faith but using poor business judgment. Acting in good faith and using poor business judgment are not mutually exclusive.

975 P.2d at 897 (internal citations omitted). Even assuming *arguendo* Former President Gallogly and Provost Harper exhibited poor business judgment in relation to Plaintiff's dismissal from certain positions at the University, this is not enough to create liability. "An employee's act is within the scope if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer." *Nail v. City of Henryetta*, 1996 OK 12, ¶11, 911 P.2d 914, 918.

Considering this standard, Plaintiff has not sufficiently alleged facts which tend to show that Former President Gallogly and Provost Harper were in any way acting outside the scope of their employment. In fact, the allegations in Plaintiff's Complaint speak more to the University delegating authority to Defendants, thus bringing Former President Gallogly and Provost Harper clearly within the immunity granted by the Act.

Plaintiff's complaints center around being removed from certain positions at the University. From a practical and legal standpoint, Former President Gallogly and Provost Harper cannot influence decisions regarding employment extended by the University. Rather, it is only through their capacity as President and Provost—and Plaintiff's alleged supervisors—that the actions complained of by Plaintiff are even possible. The acts of Former President Gallogly and Provost Harper in relation to Plaintiff were further ratified by the University's Board of Regents when they approved such actions. The ratification of the actions of Former President Gallogly and Provost Harper establishes *prima facie* that

they acted within the scope of their employment. *See Shephard v. CompSource Okla.*, 2009 OK 25, ¶22, 209 P.3d 288, 294.

The President and Provost are required to perform certain discretionary acts necessary to the functioning of their positions and the performance of their duties. The very purpose of state sovereign immunity is to spare state employees such as them from unwarranted liability and the unwarranted demands customarily imposed upon those defending a lawsuit. Accordingly, this Court should dismiss Plaintiff's claim for tortious interference of business relations against Former President Gallogly and Provost Harper.

## II. PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE OF BUSINESS RELATIONS IS NOT VIABLE.

Plaintiff's claim that Former President Gallogly and Provost Harper "tortuously interfered" with business opportunities and contracts is not viable under Oklahoma law and should be dismissed. It is well established that a claim for wrongful interference is not viable where an individual, such as an employee, acts in a representative capacity for a party to the relationship. *See Brown v. State Farm Fire & Casualty Co*., 2002 OK CIV APP 107, ¶ 20, 58 P.3d 217, 223 (citations omitted); *Ray v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 1994 OK 100, ¶ 15, 894 P.2d 1056, 1060; *see also U.S. Bank, N.A. v. Alexander*, 2012 OK 43, ¶ 123 n. 12, 280 P.3d 936, 942 n. 12; and Okla. Stat. tit 70, § 3305(c) & (d) ("The Board of Regents is authorized to enter into contracts and to authorize officials of the University to act on its behalf in carrying out the powers conferred upon it."). Here, Former President Gallogly and Provost Harper were only acting in their representative

capacity for the University, a party to all business opportunities and contracts Plaintiff alleges Former President Gallogly and Provost Harper interfered with.

Second, an employee can only be subjected to liability for a tortious interference claim if he acts outside the scope of authority. *See, e.g., Brown*, ¶ 20, 58 P.3d at 223. As set forth *supra*, in Argument I, Plaintiff's allegations are insufficient to remove Former President Gallogly and Provost Harper from the scope of their authority delegated by the University. The conduct of Former President Gallogly and Provost Harper furthered the interests of the University, and their conduct is not independently actionable. Plaintiff cannot meet the pleading requirements for her claim. *See Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1453-54 (10th Cir. 1997).

## CONCLUSION

Plaintiff's claim for tortious interference is an end-run around the procedural fundamentals of the OGTCA, and she improperly attempts to sue Former President Gallogly and Provost Harper. Since both University employees were acting within the scope of their employment as defined in the OGTCA, Former President Gallogly and Provost Harper are immune from liability and cannot be sued.

Separate from the statutory requirements of the OGTCA, Plaintiff's claim is still lacking. Plaintiff's claim for tortious interference of business relations is not viable, since both Former President Gallogly and Provost Harper, at all times, were agents of the University, a party to Plaintiff's alleged contract or business opportunity. For these reasons, Plaintiff's claim for tortious interference against Former President Gallogly and Provost Harper must be dismissed.

Respectfully submitted,

s/ Rachel M. Rogers

Heidi J. Long, OBA No. 17667
Rachel M. Rogers, OBA No. 22626
Office of Legal Counsel
University of Oklahoma
660 Parrington Oval, Suite 213
Norman, Oklahoma 73019
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
Email: hlong@ou.edu
Email: rrogers@ou.edu

Anton J. Rupert, OBA No. 7827
Geren T. Steiner, OBA No. 18845
Rupert Steiner & Free, PLLC
14001 Quail Springs Parkway
Oklahoma City, OK 73134
Telephone: (405) 607-1494
Facsimile: (405) 607-1450
Email: Tony@RSFokc.com
Email: Geren@RSFokc.com

*Attorneys for Defendants, the State of Oklahoma* ex rel. *Board of Regents of the University of Oklahoma, James L. Gallogly, and Jon Kyle Harper*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Rand C. Eddy
Mulinix Goerke & Meyer, PLLC
210 Park Avenue, Suite 3030
Oklahoma City, OK 73102

*Attorney for Plaintiff*

s/ Rachel M. Rogers