# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

SUZETTE GRILLOT, )
                                                )
             Plaintiff, )
                                                )
-vs-                                       )      Case No. CIV-19-0241-F
                                              )
STATE OF OKLAHOMA, ex rel. )
UNIVERSITY OF OKLAHOMA )
BOARD OF REGENTS, et al., )
                                              )
             Defendants. )

## ORDER

Defendants James L. Gallogly and Jon Kyle Harper move to dismiss the tortious interference with business relations claim (tortious interference claim). Doc. no. 10. The tortious interference claim is the third of three claims alleged in this action,[1] and is alleged against the moving defendants only. Doc. no. 10. Plaintiff Suzette Grillot responded to the motion, objecting to dismissal. Doc. no. 11.[2] Gallogly and Harper ("defendants," hereafter) filed a reply brief. Doc. no. 12.

For the reasons set out in this order, the motion to dismiss will be granted.

### Discussion

The tortious interference claim alleges:

---

[1] This action also alleges a claim under the Equal Pay Act, 29 U.S.C. §206(d)(1), against the State of Oklahoma ex rel. University of Oklahoma Board of Regents (OU); and a claim against Gallogly and Harper under 42 U.S.C. § 1983 for violation of plaintiff's First Amendment rights.

[2] Plaintiff's response brief is not in the required font size. *See*, LCvR7.1(d). Future filings, by any party, which do not comply with this rule may be stricken. (This rule is not a mere technicality. Using a small font size may allow a party to avoid page limits, although that did not happen here).

> The acts of Defendants Gallogly and Harper against Plaintiff tortiously interfered with [plaintiff's] business opportunities and contracts by retaliating against her and punishing her for her constitutionally protected conduct, as well as her gender.

Doc. no. 1, ¶ 71.

The phrase "business opportunities and contracts," as used within this claim, is construed to refer to the roles and positions which plaintiff allegedly held at OU and from which she was allegedly removed. Specifically, the complaint alleges that plaintiff was: 1) dismissed from the position of Dean of the David L. Boren College of International Studies; 2) dismissed from the position of Vice Provost of International Programs at the University of Oklahoma; 3) removed from her role and responsibilities as leader of the President's Community Scholars Program (study abroad programs); and 4) removed from her title, role and responsibilities associated with the William J. Crowe, Jr., Chair in Geopolitics in the Department of International and Area Studies. Doc. no. 1, ¶¶ 13, 26.

Thus, the tortious interference claim alleges that Gallogly and Harper – as the (now former) president of OU (Gallogly), and the senior vice president and provost of OU (Harper)[3] – interfered with plaintiff's business opportunities and contracts with OU when they removed plaintiff from the roles and positions described above.

The motion asks the court to dismiss Gallogly and Harper from this claim on two grounds: defendants' immunity as state employees, an argument which is considered under Rule 12(b)(1), Fed. R. Civ. P., because immunity implicates jurisdiction; and failure to state a claim, an argument which is considered under Rule 12(b)(6), Fed. R. Civ. P.

---

[3] For defendants' alleged titles, *see,* doc. no. 1, ¶¶ 10-11.

*1. Standards*

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may take two forms: a facial attack challenging the complaint's allegations or a factual attack challenging the facts upon which subject matter jurisdiction depends. Holt v. United States, 46 F.3d 1000, 1002 (10th Cir.1995). Defendants do not state whether their motion is intended as a facial or factual attack on jurisdiction, and it is not completely clear how the motion should be characterized.[4] Accordingly, the court will set out the standards applicable to both types of Rule 12(b)(1) motions.

"[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." Id. In contrast, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." Id. at 1003 (internal citations omitted).

Applying either of these standards to the Rule 12(b)(1) portion of the motion, the results stated in this order would be the same.

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic

---

[4] Defendants' arguments keep to the pleadings, with one exception. The exception is an argument concerning ratification by the Board of Regents, which goes beyond the face of the pleadings but as to which defendants cite no supporting evidence in their moving brief, waiting until their reply brief to do so.

Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *See generally,* Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*.

## 2. *Immunity Under the OGTCA*

Defendants argue that as alleged state employees (employees of OU), they are entitled to immunity under the Oklahoma Governmental Tort Claims Act (OGTCA).

To enjoy immunity from suit as a state employee, the employee's relevant acts must be acts within the scope of his employment. As defined in the OGTCA, "scope of employment" means:

> performance of an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority…but shall not include corruption or fraud.

51 O.S. Supp. 2019 § 152(12). Thus, an employee who allegedly acts in bad faith is not entitled to immunity.

Defendants contend that their alleged acts of interference (removing plaintiff from various positions or responsibilities at OU) are, by their nature, acts which are

4

necessarily within the scope of defendants' employment. Defendants also argue that the tortious interference claim does not allege "bad faith" *per se* on the part of Gallogly or Harper.[5] The tortious interference claim, however, incorporates numerous alleged facts (doc. no. 1, ¶¶ 12-59) by which plaintiff intends to show that defendants acted in bad faith when they interfered with plaintiff's business opportunities and contracts with OU. Relying on these underlying acts, the complaint alleges that defendants interfered with plaintiff's business opportunities and contracts with OU "by retaliating against her and punishing her for her constitutionally protected conduct, as well as her gender." *Id*. at ¶ 71. Given all of these allegations, defendants' arguments are unpersuasive.

Defendants also make a ratification argument (ratification by the Board of Board of Regents) in an effort to demonstrate that their alleged acts of interference were acts within the scope of their employment. As already pointed out, defendants' moving brief cites no evidence of such ratification. Defendants cite evidence of ratification in their reply brief, but at that stage plaintiff had no opportunity to respond to their evidence. Furthermore, even if the court were to consider the evidence cited for the first time in defendants' reply brief (an internet address where the Board of Regents' Minutes for January 30, 2019, can be found) the cited minutes do not cover all of the acts of interference which are alleged in support of the tortious interference claim. The reference to plaintiff Grillot on p. 36407 of the minutes relates to "deleted titles Dean of College of International Studies and Vice Provost for International Programs." But these are not the only positions and responsibilities which the complaint alleges were interfered with.

---

[5] The complaint uses the term "bad faith" in ¶68, but that paragraph is not incorporated by reference in the tortious interference claim.

For these and other reasons, at least at this early stage, the court declines to dismiss the tortious interference claim on immunity grounds. (In the nature of things, it is hard to imagine that these individual defendants were not acting within the scope of their employment with respect to all of the matters complained of by the plaintiff, but, in light of the Rule 12(b)(6) dismissal of the tortious interference claim against these defendants, it is not necessary to dwell further on this point.)

### 3. *Failure to State a Claim*

Defendants' other argument for dismissal is that the tortious interference claim does not state a plausible claim for relief because an agent of a principal cannot be held liable for interfering with a contract between the principal and a third party. *See*, Martin v. Johnson, 975 P.2d 889, 896 (Okla. 1998). That is exactly what is alleged here: Gallogly and Harper, the agents (or employees) of the principal (OU), allegedly interfered with a contract (or business opportunity) between the principal (OU) and a third party (plaintiff Grillot). Thus, to the extent that the general rule operates, the tortious interference claim fails.

There is an exception to the rule which applies if the agent was acting against the interest of the principal and in furtherance of the interests of the agent. As stated in Martin, in prior cases which had set out the rule noted above, the Court had not addressed "whether an agent could be held personally liable on an interference with contract claim if the agent was acting against the interests of the principal and in furtherance of interests of the agent." *Id*. Martin addressed that issue, stating that "If an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract." *Id*. at 896-97. Martin cited a number of cases from other jurisdictions which agree with it on this point. Among those cases, several emphasize that for liability to exist in this situation, the agent must have acted in his own personal interest rather than

6

in the interests (or perceived interests) of his employer. *Id*. at 897, n.8. For example, Martin cites Murray v. St. Michael's College, 667 A.2d 294 (Vt. 1995), as a case which held that the "key factor" is whether defendants were acting outside the scope of their employment to further their own interests. *Id*. at 897, n.8.[6]

This discussion in Martin makes clear that for the exception to the general rule to apply with the result that the tortious interference claim alleged in this action survives, the agent accused of tortious interference must have acted against the interest of the principle and in furtherance of the agent's own, personal interest. Moreover, to show that the agent was acting in his own interests requires more than a showing of bad faith; plaintiff must show that the agent was acting contrary to the business interest of his employer and in furtherance of the agent's own, personal interests. *See*, Graham v. Cargill, Inc., 2011 WL 5429316, **3-4 (W.D. Okla. Nov. 9, 2011) (summary judgment stage); Taverna v. First Wave, Inc., 2010 WL 4930583, *14 (N.D. Okla. Nov. 30, 2010) (summary judgment stage); Sanders v. State of Oklahoma ex rel. Oklahoma Workers' Compensation Comm., 2016 WL 1737135, *5 (W. D. Okla. May 2, 2016) (motions to dismiss stage).

The complaint alleges no facts which plausibly show or suggest that Gallogly or Harper's acts of interference, misguided or improper as plaintiff would argue they were, were acts to further Gallogly or Harper's personal interests rather than the interests of OU. Accordingly, the exception to the general rule does not apply, and

---

[6] Other cases cited and described in Martin, at 897, n.8, include: Hoschler v. Kozlik, 529 N.W. 2d 822 (Neb. 1995) (employee of corporation not liable if he acts in his official capacity on behalf of the corporation and not as an individual for his individual advantage); Murray v. Bridgeport Hosp., 480 A.2d 610 (Conn. 1984) (agent can be liable for interference if agent did not act legitimately within agent's scope of duty but used the corporate power improperly for personal gain); Holloway v. Skinner, 898 S. W. 2d 793 (Tex. 1995) (plaintiff must show officer of a corporation acted in a fashion so contrary to the corporation's best interests that the officer's actions could only have been motivated by personal interests); emphasis added.

plaintiff's tortious interference claim against Gallogly and Harper fails as a matter of law.  This is not a close issue.

Conclusion

After careful consideration, defendants' motion to dismiss the tortious interference claim is **GRANTED**.  The court notes that plaintiff has not requested leave to amend.  The tortious interference claim is accordingly **DISMISSED** with prejudice under Rule 12(b)(6), Fed. R. Civ. P.

This action will continue as an action which alleges an Equal Pay Act claim against OU, and a First Amendment claim against Gallogly and Harper under 42 U.S.C. § 1983.

IT IS SO ORDERED this 5th day of August, 2019.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0241p001 rev_.docx