## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SUZETTE GRILLOT, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No: CIV-19-241-F |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF OKLAHOMA, ex rel., | ) | |
| UNIVERSITY OF OKLAHOMA | ) | |
| BOARD OF REGENTS; | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JAMES L. GALLOGLY (Individually), | ) | |
| PRESIDENT, UNIVERSITY OF | ) | |
| OKLAHOMA; | ) | |
| | ) | |
| And | ) | Jury Trial Demanded |
| | ) | Attorney Lien |
| JON KYLE HARPER (Individually), | ) | |
| SENIOR VICE PRESIDENT AND PROVOST,) | | |
| UNIVERSITY OF OKLAHOMA. | ) | |
| | ) | |
| *Defendants*. | ) | |

## SECOND AMENDED COMPLAINT

Comes Now, Plaintiff, Suzette Grillot, by and through counsel, Rand C. Eddy, and for her causes of action against Defendants (collectively "Defendants") Board of Regents of the University of Oklahoma ("Board" or "OU"), James L. Gallogly ("former President Gallogly" or "Gallogly"), and Jon Kyle Harper ("Provost Harper" or "Harper") alleges and states:

## THE PARTIES

1.      Plaintiff Suzette Grillot "Plaintiff" is a female who is a citizen of Oklahoma City, Oklahoma, located in Oklahoma County, within the boundaries of the United States Western Federal District of the State of Oklahoma.

2.      The Defendant Board of Regents of the University of Oklahoma is a State body corporate and body politic that has the power to sue and be sued.  The Board is a political subdivision in Cleveland County, as defined by 51 O.S. § 151, *et seq*. The Board is responsible for governance of the University of Oklahoma, a political subdivision of the State Government of Oklahoma. Pursuant to Title 70 O.S. § 50 (3) (3305), the Board shall have the supervision, management and control of OU and all its integral parts.

3.      From March 2018 and until May of 2019, Defendant Gallogly was the President of the University of Oklahoma, who reported to the Board of Regents, was chief executive official of the University, and was responsible for all administrative actions at OU.

4.      Defendant Jon Kyle Harper was and is, presently, Senior Vice President and Provost at OU, who reported directly to former President Gallogly and who was the direct supervisor of Plaintiff Grillot during the time of relevant events.

## JURISDICTION AND VENUE

5.      Jurisdiction in this court is appropriate pursuant to 28 U.S.C. §1331, as Plaintiff's claims involve matters or issues under federal law.

6.      Venue is appropriate in this court pursuant to 28 U.S.C. § 1391, as OU conducts business, operations and may be located and served within the boundaries of

the Western District Federal Court of Oklahoma. The substantial part of the events and/or emissions giving rise to this action occurred in the Western District of Oklahoma.

7.      Plaintiff has exhausted administrative remedy by filing timely charges against Defendant with the Equal Employment Opportunity Commission for Title VII breach. Plaintiff is in receipt of her Notice of Right to Sue and is within the allowable period to bring corresponding action. This action comes accordingly.

## ALLEGATIONS OF FACT

8.      Plaintiff is a tenured-faculty member in the Department of International and Area Studies within the David L. Boren College of International Studies ("College" or "CIS") at OU.

9.      Plaintiff has been employed at OU since January 1999, serving, progressively, in the capacities of Visiting Assistant Professor, Assistant Professor, Associate Professor, Associate Director, Associate Dean, Full Professor, Interim Dean, Dean, Vice Provost, and William J. Crowe, Jr. Chair in Geopolitics.

10.      Plaintiff was employed as Dean of CIS from about December of 2012 until January 18, 2019. As Dean of CIS, Plaintiff served OU in the official capacity of an academic executive officer and the College's chief administrative officer. The Dean position held the primary charge of fulfilling the mission, vision, and core values of CIS with respect to CIS students, prospective students, faculty, staff, donors, key stakeholders, and alumni. The Dean of CIS had dual reporting responsibilities to the OU President and Provost, during and prior to the tenure of the Plaintiff.

11.     CIS distinguishes itself from other colleges at OU insomuch as its mission intimately and expressly involves those of a foreign national origin, minority race, ethnicity, and those associated with said protected classes. A central element of its purpose is to foster interaction between American students, faculty, and staff and international students, faculty and staff. CIS is also substantially and significantly comprised of faculty, staff, and students of a minority race, ethnicity, and foreign national origin.

12.     Plaintiff was employed as Vice Provost of International Programs at OU from about December of 2012 until January 21, 2019. As Vice Provost for International Programs, Plaintiff served in the official capacity of Senior International Officer with the primary charge of oversight and responsibility for OU's international operations and engagement, including that of OU-Italy, OU-Mexico, and OU-Brazil programming. Plaintiff's position necessarily involved formal and informal contact and business dealings with sovereign, foreign governments. Additionally, a central element of Plaintiff's responsibility as Vice Provost was to foster inclusion of those of foreign national origins, minority races and ethnicities at OU and within the OU community. Plaintiff held the ultimate responsibility at OU for the success of OU's international students on all OU campuses.

13.     Plaintiff reported and complained of the pay inequity between herself and male colleagues to an immediate supervisor, Provost Harper.

14.     Provost Harper tacitly acknowledged gender-based pay inequity regarding Plaintiff's pay by and through his action in June of 2015 to increase Plaintiff's salary.

Yet Provost Harper failed to adequately correct the illegal condition of inequity by administering an increase in pay that did not adequately resolve the inequity.

15.     A meeting was held on November 26, 2018, consisting of approximately twenty OU deans and executive staff persons. In the meeting, multiple persons, including Plaintiff, made Provost Harper, former President Gallogly, former Vice President Jacquelyn Wolf, and OU Human Resources executive staff aware of clear, long-existent, ongoing and unresolved gender pay inequities at OU. Former President Gallogly, Ms. Wolf, and Provost Harper conceded the presence of gender pay issues at OU. Ms. Wolf stated to the room: "You could probably all identify particular, individual cases. . ." Provost Harper was dismissive of the gender pay concerns. Plaintiff stated the problem was systemic and university wide.  Provost Harper requested participants in the meeting to bring only severe cases of gender pay inequity to his attention. OU maintained a standing practice of wage discrimination against women, including Plaintiff, on the basis of their gender.

16.     In the meeting on November 26, 2018, former President Gallogly and Provost Harper asserted that, across the board, OU faculty were underpaid and stood at 92% of the comparable market (an 8% market deficit). Responsively, former President Gallogly pursued a 6% raise, despite his numerous lamentations that the action was not fiscally prudent given OU's budget conditions.  Plaintiff's salary market comparable was at 85%. While 8% was a substantial enough deficit to pursue raises in the midst of a budget crisis at OU, Plaintiff's salary deficit was apparently not severe enough to rise to former President Gallogly or Provost Harper's metric for corrective action. Plaintiff's

severe salary inequality existed because of her gender and was not resolved because of her gender.

17.     OU's market comparison practices revealed gender pay issues at OU. Gender pay issues were not a priority for the Gallogly administration.

18.     During the course of her employment, Plaintiff was subjected to wage discrimination, a hostile work environment, and disparate treatment on the basis of her gender.

19.     During the course of her employment, Plaintiff experienced adverse employment action by her supervisors motivated by her raising of concerns, publicly and privately, of gender discrimination at OU and her gender.

20.     Plaintiff was compensated disproportionately less than male employees performing substantially equal work for the last three (3) years.

21.     Over the course of the last three (3) years (March of 2016 to January of 2019), Plaintiff was compensated less than her peer, male Deans at OU who were performing equal work, work of substantially equal skill, exerting similar effort, in possession of similar responsibility, and performing under similar working conditions:

      a.     In the period of instance, Plaintiff's base salary was approximately:

          i.     $18,167.00 (monthly)

          ii.     $218,000.00 (annually)

          iii.     $617,667.00 (total)

      b.    In the period of instance, OU Dean of the College of Architecture, Hans Butzer, was compensated at a base salary of approximately:

          i.    $22,083.00 (monthly)

          ii.    $265,000.00 (annually)

          iii.    $750,832.00 (total)

          iv.    For the period of instance, this amounts to a difference between Butzer and Plaintiff of about <u>18%</u>, a total of about <u>$133,165.00</u> in base salary wages.

      c.    In the period of instance, OU Dean of the College of Earth and Energy at OU, J. M. Stice, was compensated at a base salary of approximately:

          i.    $23,845.00 (monthly)

          ii.    $286,149.00 (annually)

          iii.    $810,757.00 (total)

          iv.    For the period of instance, this amounts to a difference between Stice and Plaintiff of about <u>24%</u>, a total of about <u>$193,090.00</u> in base salary wages.

22.    Plaintiff had additional roles and responsibilities as Vice Provost for International Programs that were above and beyond those of the position of Dean of CIS and her peer, male Deans, including but not limited to Deans Butzer and Stice.

23.     During the course of her employment, Defendant demoted Plaintiff for reasons including but not limited to her public speech on matters of public concern.

24.     During the course of her employment, Defendant demoted Plaintiff, motivated by her Title VII protected activity of association with and advocacy for members of a protected class, including those of a foreign national origin and of minority ethnicity and/or race.

25.     On or around September of 2018, at a regular Dean's Council meeting, a presentation was given by OU personnel regarding the advent of a collaboration between OU and the Federal Bureau of Investigation to train OU faculty and staff on how to identify individuals engaged in theft of OU intellectual property and/or espionage. Plaintiff, Provost Harper, and approximately a dozen OU deans were present in the meeting, as well as other OU staff. The presentation identified the threat as being one associated with members of a foreign national origin. Provost Harper was supportive and encouraging of the effort. In the meeting, Plaintiff expressed concern that this appeared to be targeting of members of a foreign national origin for disparate treatment. Other deans in the meeting expressed concerns as to how the effort would negatively impact members of a foreign national origin. Plaintiff advised attendees of the meeting that given the already difficult and challenging climate for international students, faculty, and staff at OU; the effort would be detrimental to them. Plaintiff asked Provost Harper if there was any evidence that the risks being addressed had happened or were happening at OU; Provost Harper failed to confirm. Plaintiff's words and actions in this meeting constituted, amounted to, and were, in fact, reporting of Title VII breach, discriminatory practices.

26.     Upon information and belief, former Board member and Chairman (2013-2019) Clay Bennett, maintained animus for the South American nation of Brazil. Mr. Bennett made his animus for Brazil and disapproval of any activity by OU in or with Brazil known among OU officials, including but not limited to, former Senior Executive Vice President, Nicholas Hathaway. Mr. Hathaway advised Plaintiff on numerous occasions of Mr. Bennett's sentiments and opinions regarding Brazil. Consequently, Mr. Hathaway advised Plaintiff that the OU in Rio program should be administered with care to not attract the Board's attention.

27.     During the course of her employment, Defendant unlawfully discriminated and retaliated against Plaintiff, including affecting a negative "performance review," for her association with and advocacy for members of a protected class, including those of a foreign national origin and of minority ethnicity and/or race.

28.     During the course of her employment and after being removed from the positions of Dean and Vice Provost, Defendant unlawfully removed a number of additional roles, responsibilities, and benefits from the Plaintiff that were not clear or direct elements of the responsibilities of the position of Dean of CIS, officially or unofficially. They include but are not limited to:

> a.     Removal of role, responsibility, and compensation as leader of the President's Community Scholars (PCS) study-abroad programs on February 5, 2019

      b.     Removal of title, role, responsibility, and resources associated with the William J. Crowe, Jr. Chair in Geopolitics in the Department of International and Area Studies on March 1, 2019.

      c.     Retroactive change in compensation after termination to move overload teaching assignments to in-load requirements, resulting in a further loss of just compensation.

29.    Plaintiff made numerous public statements, critical of the OU administration and administrative actions, in the period of December 2017 until, throughout and after January 18, 2019, the date Provost Harper executed her dismissal from the position of Dean. Defendant exhibited a pattern of adverse employment actions toward Plaintiff for her public speech.

30.    In December of 2017, Plaintiff publicly criticized University of Oklahoma Regent, Kirk Humphreys for making derogatory comments on the basis of sexuality on television.

31.    At numerous instances in January and February of 2018, Plaintiff publicly commented about the Board's secretive manner in which the search for a new OU President was being conducted at the time.

32.    In February of 2018, OU Regent Renzi Stone directly criticized Plaintiff for her public comments given in February of 2018.

33.    On March 26, 2018, Plaintiff drafted and delivered a public letter, signed by more than 500 members of the public in addition to Plaintiff which commented further

on the selection process for former President Gallogly, the selection itself, and solicited questions of then-OU President-Designate Gallogly.

34.     On April 18, 2018, Provost Harper held a meeting with Plaintiff in which he criticized her for her recent public remarks.

35.     Sometime after former President Gallogly's selection on March 26, 2018, but prior to his assumption of the Office of the President of OU, former President Gallogly made public comments that indicated staff layoffs at OU were under consideration. Plaintiff made a public statement on June 24, 2018, in which she raised concern for the potential disparate impact on women such layoffs could have at OU.

36.     On July 12, 2018, Provost Harper held a meeting with Plaintiff in which he requested (2) two memos from Plaintiff:

    1)     justification for the continued existence of the College; and

    2)     justification for short-term study abroad programs.

37.     The following day, July 13, 2018, Provost Harper requested, by email, information regarding the existence of and potential closing of international study centers in Mexico and Brazil.

38.     In the afternoon of July 19, 2018, former President Gallogly and Provost Harper held a meeting with Plaintiff – a meeting that had been previously scheduled to discuss the requests for information regarding the study centers, study abroad programming, and other requests.

39.     During the meeting on July 19, former President Gallogly used a raised voice to verbally reprimand Plaintiff for making information public that ought not be

public. Former President Gallogly and Provost Harper's articulated justification for this was Plaintiff's inability to understand the fiscal context of that which she made public. Former President Gallogly made such statements as: "You wouldn't understand the budget even if I showed it to you. You are just an academic. You just study the world. I have worked around the world. My passport is twice as thick as yours."

40.     In a close proximity and motivated by the events alleged in Paragraph 35, former President Gallogly described Plaintiff, directly and indirectly, as emotional, problematic, unprofessional, over-reactive and not to be trusted. These words and acts were, in part, motivated by Plaintiff's gender and Plaintiff's prior protected activity, herein alleged.

41.     On August 8, 2018, Provost Harper criticized Plaintiff's use of social media to voice her opinions. Provost Harper stated that she was "unprofessional and untrustworthy." Later, in the same conversation, Plaintiff specifically asked Provost Harper if there was an issue with the performance of her duties, to which he responded that "[her] performance was appropriate for the past administration, but that they would see how [she] adapt[s] to the new regime and new priorities." These words and acts were, in part, motivated by Plaintiff's gender. These words and acts were, in part, motivated by and occurred in a close proximity to Plaintiff's public and protected speech, alleged herein.

42.     On August 14, 2018 Plaintiff met with Provost Harper and Associate Provost Stewart Berkinshaw to discuss budget reductions for CIS. Throughout the conversation Provost Harper consistently referred to CIS in a negative way and referred

to Plaintiff as "juvenile" when she questioned whether the new administration considered international education a priority.

43.　　On October 16, 2018 Plaintiff met with Former President Gallogly, Provost Harper, Associate Provost Berkinshaw and then-acting Chief Financial Officer Ken Rowe to discuss the CIS budget. In the meeting, Former President Gallogly denied that CIS was relevant to the University's diversity efforts.

44.　　On November 6, 2018, Provost Harper informed Plaintiff that the submission of her annual "self-evaluation" was six days past due and requested the evaluation. Plaintiff informed Provost Harper that she had concerns about having never been formally evaluated in her entire time as Dean of CIS and OU Vice Provost for International Programs. Upon information and belief, Plaintiff was singled out for such treatment in retaliation for her public and protected speech and other protected activity.

45.　　On January 12, 2019, Provost Harper informed Plaintiff, via phone, the College would receive significant and specific cuts in funding from the central administration, amounting to an approximate 47% reduction in funding to CIS in contrast to the previous fiscal year. During the conversation, Plaintiff questioned the reasoning for the degree of the cuts and asserted ulterior motives were present.

　　　　a.　　Plaintiff's questioning included but was not limited to the targeted cuts to the OU in RIO Program. OU in Rio is a program which:

13

i.  facilitates and provides for the exchange of students from both Brazil to attend OU and OU students to study in Brazil;

ii.  increases opportunities for scholarly activity by OU faculty whose discipline encompasses Brazil or are themselves Brazilian nationals, of a minority race, ethnicity, and foreign national origin;

iii.  and serves to recruit prospective students, faculty, and staff from Brazil into the enrollment at or employment with OU.

b.  Plaintiff asserted that the Program could, despite the cuts, continue to operate at reduced cost with CIS's remaining funds and resources.

c.  For reasons including but not limited to Provost Harper's failure to provide sound or logical fiscal reason for the closure of OU in Rio and the 47% cut to CIS as well as the evident and de facto, albeit ulterior, motive to affect disparate and negative treatment against thousands of members of protected classes at OU, Plaintiff asserted the actions were undue, improper, and wrong. Acting and speaking upon the conviction that such cuts and prescribed actions were, on their face, discriminatory against students, faculty and staff on the conditions of their

protected classes of race and national origin, Plaintiff advised Provost Harper that this was a bad decision and would not be well-received by members of the public. Provost Harper advised Plaintiff that any communications regarding the cuts would need to be done in coordination with him. Provost Harper stated that he was Plaintiff's superior and she his subordinate, and she was obligated to comply. Plaintiff acknowledged the professional relationship but stated that she did not do things that she thought were wrong. Plaintiff offered no assurances that she would not publicize the contents of this conversation, given that the information was and is a matter of public concern; And, public comment on the matters would be, therefore, First Amendment protected speech.

d.      Defendant sought to affect preferential treatment for United States citizens, including those from Oklahoma, in what amounts to disparate treatment toward foreign nationals at OU.

e.      The closure of the OU in Rio program would have narrow, yet severe and disparate negative impact on students, faculty and staff of a minority race, ethnicity and foreign national origin.

f.      The 47% cut to the College would have a severe and disparate negative impact on students, faculty and staff of a minority race, ethnicity and foreign national origin.

g.     Plaintiff, therefore, refused to verbally comply with Provost
       Harper's request for Plaintiff to assist him with a
       corresponding communication plan she considered fraudulent
       and deceptive. Plaintiff, thereby, refused to waive her
       constitutionally guaranteed rights to free speech, to petition,
       and to report unlawful actions.

h.     Plaintiff's comments in this conversation amounted to,
       constitute, and were, in fact, reporting of Title VII breach.

i.     This action was attempted because Clay Bennett, the Board,
       Provost Harper, and/or President Gallogly disapprove of the
       practice of State moneys benefiting foreign nationals who are
       also members of a minority race and ethnicity.

46.    On January 17, 2019, Provost Harper delivered a negative performance
memo to Plaintiff based on her advocacy, gender, and public speech and requested a
meeting with Plaintiff the following day to discuss. Later on January 17, Plaintiff
responded to advise Provost Harper of her intentions to report the performance memo to
the OU Equal Opportunity Office and requested a reasonable amount of time to do so as
well as speak to her legal counsel before attending the meeting to discuss the
performance memo. The following day, in the morning of the January 18th, Provost
Harper responded to deny Plaintiff's requests. Provost Harper additionally advised
Plaintiff that "[his] purpose in scheduling an in-person discussion was to offer [Plaintiff]
an opportunity to resign from the Deanship rather than be removed, and the logistics of

16

that transition." Provost Harper's deliberately misleading statements to Plaintiff provide further evidence and example of the Provost's malicious, disparate, unequal, and unlawful pattern of conduct toward the Plaintiff.

47.     Provost Harper held a meeting the following day, January 18, 2019, in which he and a Human Resources' executive staff-member informed Plaintiff she could no longer continue in the role as Dean of CIS, the dismissal effective that day, 5:00 p.m. January 18, 2019. Plaintiff was presented with three (3) options:

> 1)     Resign from the university, from her faculty and Dean positions; receive one (1) year of current pay and enter into a mutual non-disclosure contract.
>
> 2)     Be removed as Dean and retain faculty title; receive 1-year of dean stipend and enter into non-disparagement contract.
>
> 3)     Be removed as Dean, retain faculty position at faculty pay.

48.     Plaintiff was dismissed for reasons including, but not limited to repeated exercise of First Amendment protected speech and advocacy for and association with members of a protected class.

49.     Until January 17, 2019, Plaintiff had never received a negative employment performance review.

50.     On January 21, 2019, Plaintiff, by and through counsel, elected "Option 3".

51.     Later, on January 21, 2019 Plaintiff released a public statement regarding her dismissal as Dean; whereby, she further engaged in protected speech.

52.     Later, on January 21, 2019, Provost Harper dismissed Plaintiff, via email, from the positions of Dean and Vice Provost of International Programs, this communication being the first mention of her discharge from the position of Vice Provost.

53.     The termination of her position as Vice Provost and the redundant notice of termination of the deanship was motivated by the animus Provost Harper possesses for Plaintiff's protected activity and is, on its face, retaliatory.

54.     The termination of Plaintiff's position as Vice Provost and the redundant notice of termination of the deanship was also motivated by Provost Harper's regard for women and Plaintiff's gender.

55.     Plaintiff retained her employment as a tenured faculty member at OU and title of the William J. Crowe, Jr. Chair in Geopolitics after the termination of her administrative positions.

56.     On January 22, 2019, Plaintiff spoke critically of Former President Gallogly, OU administration, and the Board in a public forum in a building on the OU-Norman, Oklahoma campus. The public forum was organized by students of CIS, a foreign national origin, of a minority race, or minority ethnicity. Plaintiff was invited to speak at the forum by students in advocacy of their interests and to comment on ongoing issues of public concern.

57.     On January 29, 2019, Plaintiff's office computer was confiscated at the direction of the Provost and/or Office of Legal Counsel, without prior notice or cause, and was motivated by Plaintiff's prior speech and other protected activity or conditions.

Plaintiff filed a police report. As a result, Plaintiff was unable to perform duties and functions relating to her position of faculty during this time. On information and belief, the Board's officers or agents asserted false claims after the fact in an effort justify the action.

58.     On January 31, 2019, Plaintiff's immediate supervisor, Associate Dean of CIS, Dr. Mitchell Smith, informed Plaintiff that she would retain the title of the endowed William J. Crowe, Jr. Chair in Geopolitics.

59.     On February 5, 2019, Plaintiff was informed, via phone, by then-acting Vice President for Student Affairs, Kristen Partridge, that because of her public comments on January 22, 2019, her services involving the President's Community Scholars study abroad programs were no longer appropriate.

60.     On March 1, 2019, via email letter, Provost Harper advised Plaintiff that she would no longer be in possession of the title of the Crowe Chair. This action was motivated by Plaintiff's speech and other protected activity or conditions.

## CAUSES OF ACTION

### I.  FIRST AMENDMENT RETALIATION
### THE FIRST AMENDMENT, 42 U.S.C. §1983

61.     The Plaintiff adopts and incorporates paragraphs 1-60 above, as if fully set forth herein, and further states the following:

62.     This cause of action is presented against James L. Gallogly and Jon K. Harper, in their individual capacities.

63.     During and throughout the period between December of 2017 and March of 2019, continuing to the present, Plaintiff engaged in numerous instances of public speech on matters of public concern, including but not limited to:

a.     Disparate treatment of women at OU;

b.     Disparate treatment of persons of a foreign national origin at OU;

c.     Disparate treatment of persons of a minority ethnicity at OU;

d.     Disparate treatment of persons of a minority race at OU;

e.     Sexual orientation discriminatory speech by a member of the Board;

f.     Fiscal administration of the University of Oklahoma;

g.     General administration of the University of Oklahoma;

h.     A search process for an OU President;

i.     Racism at OU; and

j.     Gender pay discrimination against women at OU.

64.     As a result, Plaintiff experienced a pattern of adverse actions toward her by her supervisors, former President Gallogly and Provost Harper.

65.     Plaintiff was retaliated against by former President Gallogly and Provost Harper for her protected speech.

66.     Former President Gallogly and Provost Harper's actions to terminate Plaintiff's employment position as Dean, Vice Provost, position with President's Community Scholars, the position of the William J. Crowe Chair in Geopolitics and the

roles, responsibilities, benefits, and wages therein lost, the cause for the action, in part or in its entirety, being Plaintiff's protected speech, herein alleged, violated her First Amendment rights.

## II. TITLE VII GENDER DISCRIMINATION
### THE CIVIL RIGHTS ACT OF 1964 § 7, 42 U.S.C. § 2000e *et. seq.* (1964)

67.　　The Plaintiff adopts and incorporates paragraphs 1-66 above, as if fully set forth herein, and further states the following:

68.　　Plaintiff presents this cause of action against OU.

69.　　Plaintiff experienced and reported instances of disparate treatment between herself and male colleagues by OU.

70.　　Plaintiff was subjected to unequal terms and conditions for her employment based on her gender.

71.　　Plaintiff was discriminated against by OU on the basis of her gender in violation of the protections afforded to her pursuant to Title VII of the Civil Rights Act of 1964.

## III. TITLE VII RETALATION
### REPORTING GENDER DISCRIMINATION
### THE CIVIL RIGHTS ACT OF 1964 § 7, 42 U.S.C. § 2000e *et. seq.* (1964)

72.　　The Plaintiff adopts and incorporates paragraphs 1-71 above, as if fully set forth herein, and further states the following:

73.　　Plaintiff presents this cause of action against OU.

74.　　Plaintiff reported instances of disparate treatment between herself, other women, and male colleagues by OU. This motivated adverse employment action by

OU against her.

75.     Plaintiff was retaliated against by OU for reporting gender discrimination against herself and other women.

## IV.  TITLE VII DISCRIMINATION
## ASSOCIATION WITH MEMBERS OF A PROTECTED CLASS
## THE CIVIL RIGHTS ACT OF 1964 § 7, 42 U.S.C. § 2000e *et. seq.* (1964)

76.     The Plaintiff adopts and incorporates paragraphs 1-75 above, as if fully set forth herein, and further states the following:

77.     Plaintiff presents this cause of action against OU.

78.     At all times relevant, Plaintiff was associated with and was engaged in advocacy for members of protected classes at OU, including those of a foreign national origin, ethnic minorities, and racial minorities. This motivated adverse employment action by OU against her.

79.     Plaintiff was discriminated against by OU on the basis of her association with members of protected classes.

## V.  TITLE VII RETALIATION
## REPORTING DISCRIMINATION AGAINST
## MEMBERS OF A PROTECTED CLASS
## THE CIVIL RIGHTS ACT OF 1964 § 7, 42 U.S.C. § 2000e *et. seq.* (1964)

80.     The Plaintiff adopts and incorporates paragraphs 1-79 above, as if fully set forth herein, and further states the following:

81.     Plaintiff presents this cause of action against OU.

82.     Plaintiff reported instances of disparate treatment against members of a protected classes at OU, including those of a foreign national origin, ethnic minorities,

and racial minorities

83.     Plaintiff was retaliated against by OU for opposing and reporting

instance(s) of discrimination against members of a protected class.

## VI. WAGE DISRIMINATION ON THE BASIS OF GENDER
## THE EQUAL PAY ACT, 29 USC § 206 (d)(1)

84.     The Plaintiff adopts and incorporates paragraphs 1-83 above, as if fully set

forth herein, and further states the following:

85.     Plaintiff presents this cause of action against OU.

86.     During and throughout the period between March of 2016 and January of

2019, OU discriminated against Plaintiff in the form of wage discrimination on the

basis of her gender by compensating her less than her male peers, performing work

substantially comparable, equal to, or less than hers.

## PRAYER

WHEREFORE, premises considered and for the reasons set forth herein, Plaintiff

respectfully prays the Court declare Defendants' actions to be in violation of the Law

and award Plaintiff her actual damages, lost wages, back pay and front pay,

compensatory damages, liquidated damages, damages for emotional pain and suffering,

and punitive damages, each as described and demanded above, in excess of 75,000

dollars, together with any further relief the Court determines to be appropriate under the

laws of the United States and the State of Oklahoma, in addition to pre-judgment and

post-judgment interest, as well as Plaintiff's costs and reasonable attorneys' fees.

**PRESENTED TO THE COURT THIS 19th DAY OF DECEMBER 2019.**

Respectfully,

/s/ Rand C. Eddy
Rand C. Eddy, OBA # 11822
Mulinix Goerke & Meyer, PLLC
210 Park Avenue, Ste. 3030
Oklahoma City, Oklahoma 73102
Telephone: (405) 232.3800
Facsimile: (405) 232.8999
rand@lawokc.com

*Attorney for Plaintiff*

## CERTIFICATE OF MAILING

I hereby certify that on December 19, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Heidi J. Long
Office of Legal Counsel
University of Oklahoma
660 Parrington Oval, Suite 213
Norman, Oklahoma 73019
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
Email: hlong@ou.edu

And

Anton J. Rupert
Geren T. Steiner
Rupert Steiner & Free, PLLC
14001 Quail Springs Parkway
Oklahoma City, OK 73134
Telephone: (405) 607-1494
Facsimile: (405) 607-1450
Email: Tony@RSFokc.com
Email: Geren@RSFokc.com

*Attorneys for Defendant*

/s/ Rand C. Eddy      _
Rand C. Eddy