UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUZETTE GRILLOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-241-J |
| ) | |
| STATE OF OKLAHOMA ex rel., ) | |
| UNIVERSITY OF OKLAHOMA BOARD ) | |
| OF REGENTS, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff Suzette Grillot has sued (1) the State of Oklahoma ex rel., Board of Regents of the University of Oklahoma, (2) former University of Oklahoma (OU) President James L. Gallogly, and (3) OU Senior Vice President and Provost Jon Kyle Harper. *See* Sec. Amend. Compl. [Doc. No. 28]. Currently pending are motions for summary judgment from Defendants Gallogly (Gallogly's Mot.) [Doc. No. 91] and Harper (Harper's Mot.) [Doc. No. 94].[1] Plaintiff has responded (Pl.'s Resp. Gallogly) [Doc. No. 105] and (Pl.'s Resp. Harper) [Doc. No. 104], Defendants replied [Doc. Nos. 106, 107], and the motions are at issue. For the reasons discussed below, Defendants' motions are GRANTED.

**I.      Relevant Background**

From December 2012 until January 18, 2019, Plaintiff was the Dean of the David L. Boren College of International Studies (CIS) at OU. During that time, she was an advocate for CIS and minority students at OU and an outspoken critic of many OU policies and practices. On January 18, 2019, Defendant Harper terminated Plaintiff from her position as CIS Dean though she remains

---

[1] Defendant Board of Regents of the University of Oklahoma also has a pending motion for summary judgment which will be addressed in a separate order.

a tenured professor within the college. Plaintiff was also removed from various other roles at OU following her demotion. As related to Defendants Gallogly and Harper, Plaintiff alleges the termination was in retaliation for her engagement in protected free speech.

## II. Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. 2020). Under such a review, the Court "'construe[s] the factual record and the reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1249 (10th Cir. 2020).

## III. Findings of Fact

The Court finds the following material facts are undisputed:

- Per OU policies, any dean is expected to provide leadership and administrative support to the college and must contribute to the "general spirt of University cooperation and collegiality." Harper's Mot. at 14; Pl.'s Resp. Harper 4.[2]

- As CIS Dean, Plaintiff was the academic executive officer for the college, responsible for undergraduate and graduate degree programs, the curriculum, faculty evaluations, etc. It was her responsibility to oversee the budget and to communicate on CIS's behalf. Nevertheless, Plaintiff reported directly to Defendant Harper. *See* Harper's Mot. at 13-14; Pl.'s Resp. Harper 4.

- Facing budget shortfalls for the 2018-2019 academic year, Defendant Gallogly began searching for areas in which to narrow the deficit. *See* Gallogly's Mot. at 5-6; Pl.'s Resp. Gallogly at 4.

- On January 14, 2019, Defendant Harper spoke with Plaintiff and discussed budget cuts proposed for the CIS. *See* Harper's Mot. at 23-24; Pl.'s Resp. Harper at 5.

---

[2] All page citations refer to this Court's CM/ECF pagination.

- The budget cut proposal included eliminating the study abroad program in Rio de Janeiro, Brazil (Rio Program). *See* Harper's Mot. at 23; Pl.'s Resp. Harper at 5.[3]

- During the meeting, the following exchange occurred:

  [Plaintiff]: I assume that you're going to be making this public, that – you know we haven't made any of this public because we're waiting for you guys to make your decisions. But now that you've made your decision, will make public the fact that OU in Rio is going to shut down.

  [Defendant Harper]: Agreed. In the communication – you know, communication needs to be thought through. So this isn't – you know, the first step is to talk to you and for you and the manager to say, here are the things that have to happen for us to execute this. And some of that is going to be legal. Some of it is going to be budgetary. You know, we obviously have to know what the next level of management plan is to know the full communications plan. So don't go announcing this publicly before we are able to --

  (Plaintiff laughs)

  . . .

  [Defendant Harper]: I understand you disagree with some of the particulars of this decision, it sounds like. But you still have the responsibility to execute them faithfully as a manager. And that includes, among other things, the communication strategy[.]

  . . .

  [Defendant Harper]: Are you in the clear understanding that we will develop a communication plan together? Suzette . . . there's a chain of command. I'm your boss. I am responsible for you. Is that clear?

  [Plaintiff]: Well, it's clear – I'm clear on what you mean by that yes. I'm clear on what you mean by that. . . .

  Harper's Mot. at 24-25; Pl.'s Resp. Harper at 5.

- Plaintiff understood that she was to help create a communication plan before she publicly announced the proposed budget cuts to CIS. *See* Harper's Mot. at 25; Pl.'s Resp. Harper at 5.

---

[3] The parties disagree as to who recommended eliminating the Rio Program but agree that it had been proposed.

- Later the same day, Defendant Harper emailed Plaintiff the outline of the proposed budget cuts to CIS.  *See* Harper's Mot. at 26; Pl.'s Resp. Harper at 5.

- Still later the same day, Plaintiff telephoned Susan Savage, chair of the CIS Board of Visitors, about the proposed cuts to CIS, calling them "pretty drastic."  Harper's Mot. at 26-27; Pl.'s Resp. Harper at 5.

- The CIS Board of Visitors is a volunteer organization consisting of unpaid members of the general public – some of whom are very prominent OU donors.  They have no fiduciary or personnel duties at OU and are outside OU's management.  *See* Harper's Mot. at 27, 29; Plaintiff's Resp. Harper at 5.

- Plaintiff then forwarded Ms. Savage the email Defendant Harper sent outlining the budget cuts.  In the email, Plaintiff stated "these cuts will have a devastating impact on the quality and accessibility of international education for students at the University."  Harper's Mot. at 27-28; Pl.'s Resp. Harper at 5.

- Plaintiff's "communications to Susan Savage were in accordance with her duties as a dean at OU[.]"  Pl.'s Resp. Gallogly at 8.

- Ms. Savage called Defendant Gallogly to complain about the budget cuts and demanded a meeting.  She also forwarded the email to the entire Board of Visitors.  *See* Harper's Mot. at 28-29; Pl.'s Resp. Harper at 5.  Ms. Savage reported to the Board of Visitors that "[t]he cuts are deep and extensive and there is no rationale provided for the targeted program or the dollar amounts.  Also, there is no sense on how cuts across the University compare."  Harper's Mot. at 29 & Ex. 25; Pl.'s Resp. Harper at 5.

- One Board of Visitors member, Rebecca Cooper Dupin, informed Plaintiff she would disseminate the information to "key OU alums" and Plaintiff thanked her saying "[t]his is going to be a big fight – it has already been ugly, but not publicly so, and now the gloves have come off.  I do need your help."  Harper's Mot. at 28-29; Pl.'s Resp. Harper at 5.

- Plaintiff did not inform Ms. Savage or Ms. Dupin that she had recommended a similar proposed list of budget cuts, minus the Rio Program closure.  *See* Harper's Mot. at 30; Pl.'s Resp. Harper at 5.

- Ms. Savage later agreed that the proposed cuts would not have a "devastating impact" and that it would "have been a better situation for all of us to have heard firsthand" about the proposed cuts and the reasons for them directly from OU.  Harper's Mot. at 28, 31 & Ex. 22; Pl.'s Resp. Harper at 5.

- On January 17, 2019, Defendant Harper sent Plaintiff a letter detailing her insubordination and failure to comply with his directive that the budget cuts were not

4

- to be publicly released until a joint communication plan had been created. *See* Harper's Mot. at 31-32; Pl.'s Resp. Harper at 5.

- Defendants Harper and Gallogly agreed that Plaintiff's communication with Ms. Savage and the Board of Visitors about the proposed budget cuts, in direct conflict with Defendant Harper's instructions, warranted her termination as the CIS Dean. *See* Harper's Mot. at 31; Pl.'s Resp. Harper at 5.

- On January 18, 2019, Defendant Harper and Plaintiff met and Plaintiff was given several options, all of which included resigning as CIS's Dean. Plaintiff chose the option which included her remaining as a professor in the CIS program. *See* Harper's Mot. at 32-33; Pl.'s Resp. Harper at 5.

- Plaintiff was removed from her Dean position based on her direct contradiction of Defendant Harper's instructions. *See* Harper's Mot. at 31; Pl.'s Resp. Harper at 5.

- Plaintiff was eventually removed from her positions as (1) Vice Provost for international programs, (2) the William J. Crowe Chair in Geopolitics, and (3) the President Community Scholars trip. *See* Harper's Mot. at 33; Pl.'s Resp. Harper at 5.[4]

## IV. Analysis

Construed in a light most favorable to Plaintiff, the undisputed facts demonstrate that she was removed from her positions based on her dissemination to Ms. Savage (and discussion with Ms. Dupin) of the proposed budget cuts in direct violation of Defendant Harper's instructions and without first having participated in creating a communication plan. *See supra* at 2-5. The question for the Court is whether that dissemination was protected speech under the First Amendment.[5] The Court finds that it was not.

---

[4] The parties disagree as to who initiated or authorized these removals but not that Plaintiff was removed.

[5] In her Second Amended Complaint, Plaintiff discusses public speech she made on various topics, critical of OU's policies, practices, and administration, from December 2017 until her termination as CIS Dean in January 2019. *See* Sec. Amend. Compl. at 4-17, 20. She generally claims she experienced "adverse actions" based on that speech and then more specifically alleges that Defendants Gallogly and Harper's "actions to terminate Plaintiff's employment" as CIS Dean was in retaliation of her protected speech. *Id.* at 20-21. However, Plaintiff admits that she was "removed from her Dean position based on her direct contradiction of Defendant Harper's instructions [not to publicly release the proposed budget cuts]." *Supra* at 5; *see also* Pl.'s Resp.

A.      **Standard for Government Employee Speech**

The parties agree that the test for government employee speech controls in this situation. *See* Gallogly's Mot. at 16; Harper's Mot. at 43; Pl.'s Resp. Gallogly at 9-10; Pl.'s Resp. Harper at 9-10.

"It is well settled that 'a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006) (citation omitted). The government employer, however, also has a "countervailing interest in controlling the operation of its workplaces." *Lane v. Franks*, 573 U.S. 228, 236 (2014) ("'Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.'" (quoting *Garcetti*, 547 U.S. at 418)). Indeed, "government employee's First Amendment rights do 'not invest them with a right to perform their jobs however they see fit.'" *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 422).

To determine if a government employee's speech is protected, the Court considers:

(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

---

Gallogly at 16 ("Dr. Grillot was subsequently terminated on the basis of Dr. Harper's concerns outlined in his January 17, 2019 email. Dr. Harper's brief affirmatively establishes that Dr. Grillot would not have been terminated but for her January 14 communication." (citations omitted)); Pl.'s Resp. Harper at 16 (same). Consequently, the Court addresses Plaintiff's public speech regarding the proposed budget cuts only.

6

*Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

### B.     Whether Plaintiff's Speech was Pursuant to her Official Duties

The Tenth Circuit takes a "broad view" of what constitutes speech that is pursuant to an employee's official duties, and speech may be so categorized "even if it deals with activities that the employee is not expressly required to perform." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008) (internal quotation marks omitted). Courts examine the instances of speech on a case-by-case basis, "looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (noting that courts focus on whether the speech stemmed from and was of the type of work the employee was paid to do). Notably, "[i]f the employee speaks pursuant to [her] official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 422)).

Defendants direct the Court to *Faghri v. University of Connecticut*, 621 F.3d 92 (2nd Cir. 2010) and the Court agrees it is persuasive. In a strikingly similar fact pattern, the university's president and provost removed the dean of the School of Engineering based on speech he made critical of the university. *See id.* at 94-96. The dean filed suit alleging retaliation for the exercise of his First Amendment rights. On appeal, the court held:

> Because the deanship of the School of Engineering is an executive, policymaking position, the management of the university was entitled to have such a position

7

> occupied by one who voiced support for, or at least did not voice opposition to, the university's policies. It was therefore entitled to remove [the plaintiff] from that position for publicly opposing the university policies. To be sure, the First Amendment protects [his] right to speak in opposition to university policies. He could not have been jailed or held liable for such speech or enjoined from speaking. But the management of a public institution, such as a university, is not required to retain in a management or policymaking position a person who publicly opposes its policies. Such an institution is entitled, for the sake of effective implementation of its policies, to have in management positions, especially high-ranking executive positions, persons who will support its policies, rather than persons who will undermine its goals by voicing public opposition to them.

*Id.* at 97. The Tenth Circuit has relied on *Faghri*, holding in a published opinion that: "We agree with the views expressed by the Second Circuit in granting qualified immunity to the president and provost of a university who were sued for First Amendment retaliation by a professor demoted from a deanship because of his public opposition to university policies." *Rock v. Levinski*, 791 F.3d 1215, 1221 (10th Cir. 2015); *see also Holub v. Gdowski*, 802 F.3d 1149, 1156 (10th Cir. 2015) (holding that college employee discovered and reported mismanagement and budgetary concerns in the course of his duties and thus his unauthorized public speech about those concerns was made pursuant to those official duties); *Klaaseen v. Atkinson*, 348 F. Supp. 3d 1106, 1168 (D. Kan. 2018) (holding professor, who was the Chair of the university department, and who criticized the university alleged mismanagement of funds in a Chair meeting, was speaking pursuant to his official duties).

Here, Plaintiff admits her "communications to Susan Savage were in accordance with her duties as a dean at OU," *supra* at 4, and she asserts that her "duties and historical practices *required* advisement of the Board, and she made speech that she thought was her job[.]" Pl.'s Resp. Gallogly at 10-11; Pl.'s Resp. Harper at 12.[6] This admission alone is fatal to Plaintiff's case. *See*

---

[6] Conversely, Plaintiff then argues that because Defendant Harper told her not to make the information public, he essentially removed the duty to communicate from her list of responsibilities. *See* Pl.'s Resp. Gallogly at 10-11; Pl.'s Resp. Harper at 11. This is a circular

*Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, 683 F. App'x 691, 698 (10th Cir. 2017) ("We need not go any further than this first step of the *Garcetti/Pickering* analysis because Plaintiffs admit that their speech was within the scope of their employment."). But even without the admission, the Court would find Plaintiff was speaking pursuant to her official duties. That is, she was the executive officer of CIS and was responsible for both budget issues and communications from the college. Indeed, she received the budget cut proposals because she was the CIS Dean and was responsible for helping to craft a communication plan. Rather than crafting such a plan, Plaintiff immediately forwarded the information – against Defendant Harper's instructions – to Ms. Savage, and discussed it with Ms. Dupin, so that she could "fight" the proposed budget cuts. *Supra* at 4.

Based on these facts and the caselaw discussed above, the Court finds as a matter of law that Plaintiff's act of disseminating the budget cut proposals was speech made pursuant to her official duties. As such, it was not protected under the First Amendment and her claims for retaliation under the First Amendment fail as a matter of law. Defendants Gallogly and Harper's motions for summary judgment [Doc. Nos. 91, 94] are therefore GRANTED.[7]

This ruling entirely disposes of the claims against Defendants Gallogly and Harper. Judgment will follow at the appropriate time.

---

fallacy and is directly contradicted by the undisputed fact that Defendant Harper emphasized to Plaintiff that she had a duty to help prepare a joint communication plan. *See supra* at 3.

[7] Based on this finding, the Court declines to address the remaining arguments in Defendants Gallogly and Harper's motions for summary judgment.

IT IS SO ORDERED this 19th of July, 2021.

_____
BERNARD M. JONES
UNITED STATES DISTRICT JUDGE